UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRELL WILKINSON,

                          Plaintiff,

            v.

RANDY BANKS, et al.,

                          Defendants.

_____

REPORT & RECOMMENDATION

02-CV-361A

## PRELIMINARY STATEMENT

By Order of Hon. Richard J. Arcara, Chief Judge, United States District Judge for

the Western District of New York, dated November 14, 2006, all dispositive motions in the

above-captioned case have been referred to this Court for report and recommendation pursuant to

28 U.S.C. §§ 636(b)(1)(B)-(C).  (Docket # 53).

Plaintiff Darrell Wilkinson has brought suit under 42 U.S.C. § 1983 against

various officers of the New York State Department of Correctional Services ("DOCS"), alleging

that they assaulted him and failed to protect him while he was incarcerated at the Southport

Correctional Facility, in violation of the Eighth and Fourteenth Amendments.  (Docket # 1).

Currently pending before the Court is defendant's motion for summary judgment on the grounds

that plaintiff did not fully exhaust his administrative remedies before filing suit as required by the

Prison Litigation Reform Act.  (Docket # 40).

**FACTUAL BACKGROUND**

According to Wilkinson's Complaint, during the morning hours of May 28, 1999, an incident occurred in the A-block of the Southport Correctional Facility ("Southport") between an unidentified inmate and members of the correctional staff.  Later that morning, while Wilkinson was in an exercise pen, several inmates allegedly initiated a chant relating to the earlier incident, thereby creating a "tense" atmosphere.  During this period of time, correctional officers arrived at the exercise pen to escort Wilkinson to his cell.  Although the usual procedure was to transfer Wilkinson with his hands handcuffed in front of him, on this day, Wilkinson was handcuffed with his hands behind his back.  After he was handcuffed, several correctional officers allegedly entered Wilkinson's exercise pen and assaulted him, then dragged him to his cell by the collar of his shirt and placed him on a stretcher.  One of the correctional officers directed that a "spit mask" be placed on Wilkinson because he was having trouble breathing as a result of the blood in his mouth and nose.  The spit mask, Wilkinson states, caused him to experience further difficulties breathing.  Wilkinson alleges that as the result of the assault, he received lacerations to the top of his head and abrasions and bruises to his face.  In addition, Wilkinson claims that the assault caused him to suffer headaches, dizziness and emotional distress.  (Docket # 1).

On July 1, 1999, Wilkinson filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") complaining that he had not received adequate medical care for pain and injuries "since [he] was jumped by officers."  (Docket # 41, Ex. A).  The grievance described various injuries and pain he claimed to suffer and sought evaluation by a physician and psychiatrist.  (*Id.*).  The grievance was reviewed by the IGRC on July 7, 1999, and the committee

granted Wilkinson's request for medical attention, noting that Wilkinson "ha[d] been put on the list to see the Facility Doctor." (*Id.*). On July 8, 1999, Wilkinson wrote a letter to the Superintendent of Southport again complaining that he had not received adequate medical care as a result of an incident in which officers "jumped" him and requesting examination by a physician and psychiatrist. (*Id.*). Wilkinson never filed any appeal of his grievance to the Superintendent or to the Central Office Review Committee ("CORC"). (Docket # 43 at ¶¶ 3-4; # 48 at ¶ 1).

Wilkinson filed a second grievance on August 1, 1999. In this grievance, Wilkinson described the alleged assault that occurred on May 28, 1999 and complained about ongoing medical problems he was experiencing. (Docket # 41, Ex. B). He requested examination by a psychiatrist and "a back and head specialist," as well as a prescription for pain medication. (*Id.*). The requested relief was denied by the IGRC on August 6, 1999, noting that Wilkinson had been seen by a surgeon, was awaiting an appointment with a psychiatrist and had been prescribed pain relievers. (*Id.*). Wilkinson did not appeal the denial either to the Superintendent or to CORC. (Docket # 41, Ex. B; # 43 at ¶¶ 6; # 48 at ¶ 1).

Several months later, on November 28, 2000, Wilkinson was transferred from Southport to the Elmira Correctional Facility ("Elmira"). At Elmira, on July 1, 2001, Wilkinson filed a grievance alleging that he had been assaulted at Southport on May 28, 1999. The grievance described the alleged assault in substantial detail, as well as the resulting injuries he suffered. Wilkinson did not identify any particular relief he was seeking. He stated that he had not previously filed a grievance relating to the assault because he feared retaliation. (Docket # 41, Ex. C).

On July 10, 2001, in response to the grievance, Floyd Bennett, Jr., Superintendent of Elmira, directed that an investigation be conducted.  Seven days later, Superintendent Bennett formally responded to the grievance using DOCS's Form 2133.  The response stated:

> This grievance concerns an alleged event that occurred May 28, 1999.  Directive 4040 V A 1 states in part, "an inmate must submit a complaint to the clerk within fourteen (14) calendar days of an alleged occurrence . . . ."
>
> Grievance is returned as untimely.

(*Id.*).  The form contained a preprinted notice at the bottom entitled "Appeal Statement," which advised Wilkinson that if he wished to "refer" the Superintendent's decision, he must sign the document and return it to the Inmate Grievance Clerk.  It further advised that he must file his appeal within four working days from receipt of "this notice."  (Docket # 41, Ex. D).

On July 30, 2001, Wilkinson sent directly to CORC a document entitled "Appeal of Superintendent's Determination of Inmate Grievance Filed."  (Docket # 41, Ex. E).  The document noted that his grievance had been denied by Superintendent Bennett on the grounds of untimeliness and raised four arguments, separately denoted as Points I, II, III and IV, in an effort to explain why he had not filed a grievance for over one year following the incident.  In conclusion, the document stated, "I am therefore respectfully requesting that this matter herein raised, and enclosed, be fully investigated as to its meritorious claim, and find within your determination a favorable decision in regards to this unprovoked brutal assault against my person."  (*Id.*).

On August 9, 2001, Thomas Eagen, Director of the Inmate Grievance Program, wrote to Wilkinson and returned the July 30 document to him.  The letter explained, "[DOCS's]

4

policy, Directive # 4040, Inmate Grievance Program, (IGP), provides inmates with an orderly,

fair and simple method of resolving grievances pursuant to the Correction Law.  The directive

makes no provision for an inmate to refer grievances directly to [CORC]."  (Docket # 41, Ex. F).

Wilkinson claims not to have received Eagen's letter or the returned documents, and he took no

further action with respect to the grievance.  (Docket # 49 at ¶ 20).  Wilkinson initiated this

lawsuit almost one year later on May 16, 2002.  (Docket # 1).


## DISCUSSION

In their Answers to Wilkinson's Complaint, defendants have asserted as an

affirmative defense that Wilkinson failed to exhaust his administrative remedies.  (Docket

## 5-11).  By court order, discovery has been limited thus far to the issue of exhaustion.  (Docket

# 18).  Following completion of discovery on that issue, defendants have filed the pending

motion for summary judgment relating to the sole issue whether Wilkinson has exhausted his

administrative remedies.  (Docket # 40).


## I.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  In reaching this determination, the court must assess whether

there exist any disputed material facts and, in so doing, must resolve all ambiguities and draw all

reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

As the Second Circuit has explained:

[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II.  Analysis

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In other words, the PLRA requires an inmate to exhaust all available remedies before initiating a lawsuit in federal court relating to prison conditions.

Defendants argue that they are entitled to summary judgment because Wilkinson failed to properly exhaust his administrative remedies with regard to the claims alleged in his Complaint, as required by the PLRA.  (Docket # 44).  Wilkinson opposes the motion, arguing both that administrative remedies were unavailable to him and alternatively, if they were available, that special circumstances existed to justify his failure to comply strictly with the procedures for pursuing those remedies.  (Docket # 50).

**A.  New York State DOCS Grievance Procedures:**  Before turning to the applicable caselaw, it is helpful to summarize the relevant procedures for filing grievances by prisoners housed in facilities within the New York State DOCS system.  The procedures, which comprise a three-step grievance process, are set forth in regulations codified at 7 N.Y.C.R.R. § 701.7.

Under the regulations applicable when the alleged assault at issue in this case occurred, an inmate was required to file a grievance with the IGRC, a committee composed of inmates and prison officials, within fourteen calendar days of the occurrence at issue.[1] 7 N.Y.C.R.R. § 701.7(a)(1); *see Hemphill v. New York*, 380 F.3d 680, 682 (2d Cir. 2004). The IGRC was obligated to review and resolve the complaint within seven days; the committee was authorized to conduct hearings, if necessary, and to issue a written decision within two days following that hearing. 7 N.Y.C.R.R. §§ 7017(a)(3) and (4). If the decision was unsatisfactory to the inmate and he wished to challenge it, he was required to file an appeal to the superintendent of his correctional facility within four days. 7 N.Y.C.R.R. § 701.7(b). The superintendent then had ten days within which to respond, and his response was required to include "simple directions" on how to appeal his determination to CORC. *Id*. Pursuant to the regulations, appeals to CORC had to be filed with the Inmate Grievance Clerk within four working days of receipt of the superintendent's decision, and CORC had twenty days within which to issue a decision. *See* 7 N.Y.C.R.R. §§ 701.7(c)(1) and (4); *Hemphill v. New York*, 380 F.3d at 682.

**B.  Legal Framework:**  Although the PLRA's requirement that a prisoner exhaust his available administrative remedies before commencing a Section 1983 lawsuit is "mandatory," *Porter v. Nussle*, 534 U.S. 516, 524 (2002), the Second Circuit has recognized certain "caveats" to that requirement. *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004). Those caveats, which may excuse a prisoner's non-exhaustion, fall within three categories:

---

[1]  The full text of the regulations in effect at the relevant time are attached as Exhibit 1 to the Affirmation of Betsy Hutchings, dated October 17, 2005 (Docket # 47), submitted in opposition to the pending motion.

when (1) administrative remedies are not available to the prisoner;
(2) defendants have either waived the defense of failure to exhaust
or acted in such a way as to estop them from raising the defense; or
(3) special circumstances, such as a reasonable misunderstanding
of the grievance procedures, justify the prisoner's failure to comply
with the exhaustion requirement.

*Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at

686).  According to the court, these caveats reflect the recognition that rigid application of the

exhaustion requirement in certain circumstances would unjustly bar suits "simply because the

plaintiff failed to follow prison grievance procedures to the letter."  *Giano v. Goord*, 380 F.3d at

677.

Since this motion was fully briefed, the United States Supreme Court decided

*Woodford v. Ngo*, 126 S. Ct. 2378 (2006), which presented the question whether "a prisoner can

satisfy the [PLRA's] exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or

otherwise procedurally defective administrative grievance or appeal."  126 S. Ct. at 2382.  In

answer to that question, the Court held that the PLRA requires "proper exhaustion," which

"means using all steps the agency holds out, and doing so *properly* (so that the agency addresses

the issues on the merits)."  *Id*. at 2385 (internal quotations omitted).  *See Ruggiero v. County of*

*Orange*, 467 F.3d at 176 (interpreting *Woodford* as holding that PLRA exhaustion mandates

"compliance with an agency's deadlines and other critical procedural rules") (quoting *Woodford*

*v. Ngo*, 126 S. Ct. at 2386).

Justice Breyer's concurring opinion in *Woodford* has led lower courts within this

Circuit to determine that the *Hemphill* framework continues to have vitality after *Woodford*.  In

his opinion, Justice Breyer noted that the Second Circuit has "interpreted the statute in a manner

similar to that which the Court . . . adopts [in *Woodford*] [and] ha[s] concluded that the PLRA's proper exhaustion requirement is not absolute." *Id*. at 2393. Citing *Giano*, he expressly entreated lower courts to "similarly consider any challenges that petitioner may have concerning whether his case falls into a traditional exception that the statute implicitly incorporates." *Id*.

Although the Second Circuit has not directly addressed the effect that *Woodford* has on the *Giano/Hemphill* framework discussed *supra*, *see Ruggiero*, 467 F.3d at 176 (declining to reach issue because outcome was same whether *Woodford* or *Giano* applied), several lower courts have concluded that in the absence of a contrary determination by the Circuit, application of the *Giano/Hemphill* caveats is still appropriate. *See*, *e.g.*, *Bester v. Dixion*, 2007 WL 951558, *8 (N.D.N.Y. Mar. 27, 2007); *Lawyer v. Gatto*, 2007 WL 549440, *4 n.4 (S.D.N.Y. Feb. 21, 2007);  *Hairston v. LaMarche*, 2006 WL 2309592, *6 n.9 (S.D.N.Y. Aug. 10, 2006); *Collins v. Goord*, 438 F. Supp. 2d 399, 411 n.13 (S.D.N.Y. 2006). Notably, those decisions, like this one, have concluded that the result would be the same under either analysis.[2]

**C. Did Wilkinson Comply with the Grievance Procedures?:**  The first question to consider on this motion is whether Wilkinson complied with DOCS's rules and regulations for filing and appealing grievances when he grieved the alleged assault that gives rise to this lawsuit. If he did, resort to the *Giano/Hemphill* caveats would be entirely unnecessary.

Although Wilkinson's papers do not state so explicitly, they may reasonably be read to concede that Wilkinson did not comply with all of the necessary procedural requirements.

---

[2] Although the parties have not briefed the effect of *Woodford* on the facts of this case, I do not believe that such briefing is necessary. If anything, the standard enunciated in *Woodford* is stricter than that set forth in *Giano* and *Hemphill*. Because I find that even under application of the *Giano/Hemphill* caveats, Wilkinson has failed to exhaust, supplemental briefing concerning an equivalent or stricter standard would serve no useful purpose.

Even if the first and second grievances filed on July 2, 1999 and August 2, 1999, respectively, could be read to complain of the alleged assault, no dispute exists that Wilkinson did not appeal either to CORC, the third-level of the grievance process.  There is likewise no dispute that the third grievance, which plainly complained of the alleged assault, was not filed by Wilkinson until approximately thirteen months after the event, well-beyond the applicable fourteen-day deadline under the grievance procedures.  Finally, no dispute exists that Wilkinson did not follow correct procedure in attempting to appeal that grievance to CORC.[3]  He did not file his appeal with the Inmate Grievance Clerk as required by the regulations, *see* 7 N.Y.C.R.R. § 701.7(c)(1), but rather mailed it directly to CORC.

Based on the documentary record before this Court, the timeliness of Wilkinson's appeal to CORC of his third grievance also appears questionable.  The Superintendent's denial of Wilkinson's grievance is dated July 17, 2001; Wilkinson's appeal to CORC is dated July 30, 2001.  (Docket # 47, Ex. 4).  Under applicable regulations, Wilkinson had four days from *receipt* of the Superintendent's denial within which to appeal, *see* 7 N.Y.C.R.R. § 70.  The timeliness of his appeal cannot be resolved at this stage, however, because the record contains no evidence as to when Wilkinson received the denial notice.  Indeed, no evidence was presented concerning DOCS's usual procedures for notifying inmates of such denials, such as, whether denials are customarily mailed or hand-delivered.  Nor was any evidence presented concerning whether

---

[3]  I easily reject defendants' contention that the document Wilkinson sent to CORC should not be considered an appeal, but should rather be viewed as correspondence.  (Docket # 52 at 2).  There is no requirement that a grievance be filed on a particular form.  *See* 7 N.Y.C.R.R. § 701.7(a)(1).

Here, Wilkinson's document was captioned, "Appeal of Superintendent's Determination of Inmate Grievance Filed" and contained a preliminary statement, four separate arguments challenging the Superintendent's determination that the grievance was untimely and a conclusion identifying the relief sought.  The document looks and reads much like an appellate brief and should be treated as an appeal.  (*See* Docket # 47, Ex. 4).

11

CORC rejects all appeals that are untimely regardless of the length of the delay.  In the absence

of such evidence, a finding that Wilkinson did not appeal within the prescribed time frame would

be unjustified.

Returning to the demonstrable procedural infirmities, Wilkinson makes no

attempt to justify his failure to appeal his first and second grievances.  With respect to the third

grievance, by contrast, he argues that its procedural infirmities should be excused under both the

first and third *Giano/Hemphill* caveats.  Taking first the question of its timeliness, Wilkinson

argues that the thirteen-month delay was justified by the fact that during twelve of those months,

the law in this Circuit did not require exhaustion of administrative remedies for prisoner claims

of assault or excessive force.[4]  *See Nussle v. Willette*, 224 F.3d 95, 106 (2d Cir. 2000)

("exhaustion of administrative remedies is not required for claims of assault or excessive force

brought under § 1983"), *rev'd*, *Porter v. Nussle*, 534 U.S. at 516.  It was not until May 29, 2001,

that the Supreme Court decided *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001), holding that

"Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of

relief sought and offered through administrative remedies."  Considering this jurisprudential

evolution, I agree with Wilkinson that his grievance, filed within four weeks of *Booth v.

Churner*, should be considered timely.  *See Rodriguez v. Westchester County Jail Corr. Dep't*,

372 F.3d 485, 487 (2d Cir. 2004) (prisoner's belief that exhaustion of excessive force claims was

not required was reasonable because Second Circuit itself held that view until it was rejected by

Supreme Court).

---

[4] While the grievance itself states that Wilkinson did not file his grievance until thirteen months after the incident out of fear of retaliation by correctional officers at Southport, that fear would not explain his failure to file a grievance for seven months following his transfer from Southport to Elmira.

Turning next to the question of Wilkinson's failure to file his appeal to CORC with the Inmate Grievance Clerk, he maintains that unclear and confusing directions by the Superintendent of Elmira made an appeal to CORC "unavailable" within the meaning of the first *Giano/Hemphill* caveat.  He further contends that his interpretation of those directions as sanctioning the transmission of his appeal directly to CORC was reasonable and constitutes "special circumstances" warranting application of the third caveat.  (Docket # 50 at 10).  Defendants vigorously disagree that the challenged directions justify relief under either caveat.

### D.  **Application of the *Giano/Hemphill* Caveats**

      **1.  Were Administrative Remedies Available to Wilkinson?:**  Application of the three-part inquiry dictated by *Hemphill* begins with the question "whether administrative remedies were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).  In answering that question, "courts should be careful to look at the applicable set of grievance procedures, whether city, state, or federal."  *Id.* at 668 (internal quotations omitted).  Courts must then examine whether statements made or actions taken by DOCS officials conflicted with those procedures, thereby rendering them in fact unavailable to the prisoner.  *See*, *e.g.*, *Wheeler v. Goord*, 2005 WL 2180451, *6 (N.D.N.Y. Aug. 29, 2005) (summary judgment inappropriate where plaintiff's failure to file appeal to CORC "could be attributed to his reliance upon the alleged representation to him by prison officials that to grieve the matter he should write to Sergeant Coffee"); *Barad v. Comstock*, 2005 WL 1579794, *6 (W.D.N.Y. June 30, 2005) ("the [c]ourt must ask whether administrative remedies existed, and if so whether defendants' actions rendered those remedies unavailable to plaintiff"); *Jeffers v. Goord*, 2005 WL 928628, *6 (N.D.N.Y. Apr. 4, 2005)

("[p]rison officials may prevent a prisoner from utilizing a remedy by incorrectly representing to the prisoner that his complaint is not grievable, or that it is grievable only though another avenue").

As described above, at the time of the alleged incident at issue in this case, DOCS had a well-established process for filing and appealing grievances by prisoners concerning conditions in their correctional facilities.  *See* 7 N.Y.C.R.R. §§ 701.1, *et seq.  See also Abney v. McGinnis*, 380 F.3d at 668 ("DOCS has a well-established administrative grievance procedure for prisoners called the Inmate Grievance Program").  That system involved a sequential three-step process culminating with review by CORC of adverse grievance determinations.  The applicable regulations provided that in order to file a grievance or an appeal thereof to the Superintendent and thereafter to CORC, the grievance or appeal needed to be filed with the Inmate Grievance Clerk.  7 N.Y.C.R.R. §§ 701.7(a)(1), (b)(1) and (c)(1).  As Thomas Eagen, Director of the Inmate Grievance Program, has explained in his affidavit accompanying the instant motion, this requirement of filing through a centralized location facilitates the tracking and orderly processing of grievances by ensuring that they are logged into a computer database, that a receipt is sent to the inmate and that all the information necessary for CORC to review the grievance is forwarded to CORC.  (Docket # 41, ¶ 5).

In this case, nothing in the record suggests that the established right of a prisoner to appeal to CORC was unavailable to Wilkinson.  Wilkinson filed a grievance regarding the alleged assault after he was transferred to Elmira.  The grievance was apparently passed directly

to Superintendent Bennett,[5] who thereafter denied the grievance as untimely.  Pursuant to applicable regulations, as well as DOCS Directive 4040,[6] Wilkinson had four days from receipt of that decision within which to appeal to CORC by filing with the Inmate Grievance Clerk. 7 N.Y.C.R.R. § 701.7(c)(1); DOCS Directive 4040 at 7.  Wilkinson has not alleged that any DOCS officials or employees prevented or impeded his efforts to file an appeal with the Clerk, nor has he claimed that any member of the DOCS staff informed him that he could or should not file with the Clerk.

Rather, Wilkinson argues that the appeal instructions on the form containing Superintendent Bennett's denial of his grievance were sufficiently confusing to render "unavailable" his appeal to CORC.  It bears noting that the instructions were not individualized directions from the Superintendent.  They were instead preprinted instructions that apparently appear on every DOCS Form 2133.  Specifically, the bottom third of the form contains the caption "Appeal Statement."  Directly below that heading, the following language is contained:

> If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk.  You have four (4) working days from receipt of this notice to file your appeal.  Please state why you are appealing this decision to C.O.R.C.

---

[5] The regulations and directives provide for expedited review by the Superintendent, bypassing the IGRC, of grievances alleging employee "misconduct or harassment."  7 N.Y.C.R.R. §§ 701.11(b)(2) and (3); DOCS Directive 4040 (June 8, 1998), at 11.

[6] Section VB.5 of Directive 4040 then in effect provided:

> Within four (4) working days after receipt of the superintendent's written response to the grievance, the inmate or any direct party to the grievance may appeal the superintendent's action to the CORC by filing an appeal (Form # 2133) with the grievance clerk.

DOCS Directive 4040 at 7.

(Docket # 47, Ex. 4).  Wilkinson contends that these instructions were unclear and confusing, leading him to believe that he had two options available:  the first to "refer" the Superintendent's decision by returning the form to the Inmate Grievance Clerk; the second to appeal to CORC within four days of the receipt of the form.  As to the second option, he further maintains, the instructions did not obligate him to file with the Clerk, rather than to forward his appeal directly to CORC, as he did.

For the reasons discussed *infra*, I do not believe that Wilkinson's interpretation of the challenged language was reasonable.  That fact, coupled with the absence of any evidence suggesting that defendants or other DOCS personnel said or did anything to preclude or dissuade Wilkinson from filing his appeal to CORC with the Inmate Grievance Clerk, compels the conclusion that administrative remedies were in fact available to Wilkinson.  *See Hemphill*, 380 F.3d at 688 ("[t]he test for deciding whether the ordinary grievances were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available") (internal quotations omitted).

**2.  Did Special Circumstances Exist to Justify Wilkinson's Failure to Comply with Grievance Procedures?:**  In *Giano*, the Second Circuit made clear that "there are certain special circumstances in which, though administrative remedies may have been available and though the defendant may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."  *Giano*, 380 F.3d at 676 (citing *Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004)) (internal quotation omitted).  Whether non-compliance is in fact

justified must be judged by examining "the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Id.* at 678.

Such circumstances, the court has further clarified, may include a prisoner's reliance on a reasonable, if ultimately incorrect, interpretation of prison grievance regulations. *Hemphill*, 380 F.2d at 690; *Giano*, 380 F.3d at 678-79. In *Giano*, for example, the court held that a prisoner's failure to file a separate grievance as to the incident giving rise to the federal claim was justified by his reasonable belief that DOCS regulations provided that his sole recourse was to appeal his related disciplinary conviction. *Giano*, 380 F.3d at 678-79. In *Hemphill*, the court remanded the case to the district court to determine, "in light of *Giano*," whether the prisoner's interpretation of DOCS regulations to permit him to seek relief directly from the superintendent was reasonable and justified his failure to file a grievance with the IGRC. *Hemphill*, 380 F.3d at 689-90.

I read *Giano* and *Hemphill* to require that a prisoner's mistaken construction of DOCS regulations or directions be *reasonable*, an interpretation that is consonant with the view taken by other lower courts. *See, e.g.*, *Dukes v. Doe*, 2006 WL 1628487, *6 (S.D.N.Y. June 12, 2006); *Barad v. Comstock*, 2005 WL 1579794 at *7; *Jeffers v. Goord*, 2005 WL 928628 at *7. *Accord Brownell v. Krom*, 446 F.3d 305, 313 (2d Cir. 2006); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). In this case, Wilkinson maintains that he reasonably understood the directions on Form 2133 to afford him two different avenues to seek redress of the Superintendent's denial of his grievance: to "refer" that decision by forwarding a copy of it to the Inmate Grievance Clerk or to appeal it to CORC within four days. (Docket # 50 at 11). Because

I find such an interpretation to be objectively unreasonable, even if genuine, I further find that Wilkinson's non-compliance cannot be considered justified by special circumstances.

First, the belief that DOCS rules afforded a prisoner dissatisfied with a Superintendent's grievance decision two separate avenues of review is belied by the heading placed directly above the instructions. That heading states "Appeal Statement," contains the challenged instructions and provides room for the prisoner to write a response to the instructions, "Please state why you are appealing this decision to C.O.R.C." The heading does not identify or suggest two options, appeal or referral.

Moreover, the specific instructions themselves, interpreted the way Wilkinson argues, make little sense. If "referral" is a review option distinct from appeal to CORC, the directions do not indicate to whom or what body the referral is being made. It would be reasonable to expect that if a prisoner is to make a choice between review of one type or another, he would be provided at the very least with the identities of the reviewing parties. In addition, the directions provide that an appeal to CORC must be taken within four days, while they contain no similar instructions concerning the time frame within which a referral must be made. Conversely, the instructions for referral prescribe the manner of filing, that is, by returning the form to the Inmate Grievance Clerk, while the instructions for appeal contain no such prescription. Only by taking the instructions as a whole, and reading them to refer to a prisoner's right to appeal to CORC, do they make sense. Read together in this manner, the instructions identify the body by whom review may be sought (CORC), the manner in which review may be sought (by forwarding the form to the Inmate Grievance Clerk) and the deadline by which review may be sought (four days from receipt of the Superintendent's decision).

18

The manner of filing grievances and appeals thereof, that is, by forwarding them to the Inmate Grievance Clerk, cannot be considered a trivial procedural requirement. As Director Eagen has explained, this requirement ensures that grievances are logged into a central, systemwide database and uniformly and efficiently processed. (Docket # 41, ¶ 5). When an appeal to CORC is received by a Clerk, the appeal is inputted and an acknowledgment of receipt of the appeal is then sent to the prisoner. That receipt, of course, facilitates the prisoner's ability to demonstrate that he timely filed in the event that he does not receive a disposition by CORC. In addition, processing grievances and appeals in a uniform manner helps to keep together the relevant documents related to the grievance, enabling the Clerk to forward to CORC all necessary paperwork relating to a particular appeal. *See* 7 N.Y.C.R.R. § 701.7(c)(2). Considering the legitimate and important policies served by the filing requirement, as well as the fact that it was one of only two instructions for filing appeals to CORC (where to file and when to file), Wilkinson's failure to file his appeal with the Clerk should not be viewed as insubstantial noncompliance.[7]

Finally, although Wilkinson does not explicitly argue that his procedural non-compliance should be excused under the second *Giano/Hemphill* caveat – whether defendants' actions estop them from raising the defense of failure to exhaust – Wilkinson's reliance on *Warren v. Purcell*, 2004 WL 1970642 (S.D.N.Y. Sept. 3, 2004), may be read to

---

[7] Wilkinson argues that his non-compliance should be viewed as inconsequential under the doctrine of substantial compliance. *See* Docket # 50 at 18. Although it is hardly free from doubt whether the doctrine of substantial compliance has any application in this context, *see McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) ("[t]he standard is not one of . . . substantial compliance"), I conclude, for the reasons discussed above, that Wilkinson's failure to file his appeal with the proper official cannot be considered insubstantial compliance.

suggest such a contention.[8]  (Docket # 50 at 15-16).  In *Warren*, the prisoner filed a grievance relating to medical inattention, which was returned to him with instructions to "feel free to correct the noted problems and to resubmit the grievance."  *Id.* at *6.  The form also stated that the grievance "needs to be investigated [and] [i]t will take a minute before a response."  *Id.* According to the court, those apparently conflicting statements – that the prisoner needed to refile and that the prisoner should await the results of DOCS's investigation – estopped the defendants from relying on the defense on non-exhaustion.  *Id.* at 6 (it was "wholly due to [DOCS's] own failure to provide simple guidance on how appropriately to proceed that plaintiff failed to exhaust his administrative remedies").

Because I find that the instructions at issue in this case, unlike those at issue in *Warren*, were not inconsistent or unclear, Wilkinson's reliance on *Warren* is misplaced. Moreover, Wilkinson has pointed to no actions or statements other than the challenged instructions on which an estoppel argument may be premised.  *See Ruggiero*, 467 F.3d at 178 ("[i]n our prior cases recognizing that defendants' actions may estop them from raising non-exhaustion as a defense, each prisoner alleged that defendants took affirmative action to prevent him from availing himself of grievance procedures").  Thus, even if Wilkinson's brief could be read to contain an estoppel argument, I find it to be no more availing than his other arguments to excuse his procedural non-compliance.

---

[8]  Wilkinson may not have argued estoppel because the DOCS's official whose actions are at issue, the Superintendent of Elmira, is not a defendant and indeed worked at a facility different from the one in which the alleged assault occurred.  *Collins v. Goord*, 438 F. Supp. 2d at 415 n.16 ("[a]lthough plaintiff's allegations suggest an estoppel argument, it is appropriate to deny summary judgment on 'availability' grounds because the officials who allegedly obstructed plaintiff's grievance are from a different facility . . . than the defendants").

**E.  Does the Dispute Whether Wilkinson Received Eagen's Letter Preclude Summary Judgment?:**  Wilkinson's final argument is that the factual dispute concerning his receipt of Director Eagen's letter precludes summary judgment.  (Docket # 50 at 20-21).  I disagree.

For purposes of this motion, I agree with Wilkinson that a factual dispute exists whether he in fact received Director Eagen's letter dated August 9, 2001, informing him that his appeal document was being returned to him because it had not properly been filed.  While Eagen affirms he sent it (Docket # 41, ¶ 6), Wilkinson swears he did not receive it.  (Docket # 49, ¶ 20). In my opinion, this dispute is not material to this motion.  I recommend that judgment be granted in favor of defendants because I find that Wilkinson's interpretation of the Superintendent's directions, which he offers as justification for his failure to comply with proper grievance procedures, was unreasonable and thus could not constitute special circumstances.  Whether he received Director Eagen's letter does not change that analysis.[9]

Accordingly, I find that Wilkinson failed to exhaust his administrative remedies, and it is therefore my recommendation that defendants' motion for summary judgment on that basis be granted.

---

[9] In fact, Wilkinson himself states that even if he had received the letter, he still would not have known what to do to properly appeal to CORC.  (Docket # 49, ¶ 22).

## <u>CONCLUSION</u>

For the foregoing reasons, it is the recommendation of this Court that defendants'

motion for summary judgment on the grounds of non-exhaustion **(Docket # 40)** be **GRANTED**.


<u> *s/Marian W. Payson* </u>
MARIAN W. PAYSON
United States Magistrate Judge


Dated: Rochester, New York
June   28  , 2007

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                              United States Magistrate Judge

Dated: Rochester, New York
          June  28  , 2007